**UNITED STATES of America**

v.

**Harold Wayne STAPLETON.**

**Crim. No. 89–00111–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

Feb. 1, 1990.

Jerry Kilgore, Asst. U.S. Atty., Abingdon, Va., for plaintiff.

Hope Dene Visco, Abingdon, Va., for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This case is before the court on the defendant's motion for judgment of acquittal after the discharge of the jury.

## FACTS

On December 22, 1989, the defendant Harold Wayne Stapleton was found guilty by a jury of conspiring with Glenna Sue Stapleton to destroy a Jeep belonging to Glenna Sue's husband, Greg Stapleton, and of possessing an unregistered explosive device. Glenna Sue Stapleton also was indicted, tried and convicted together with Harold Wayne Stapleton.

When Greg Stapleton attempted to start the engine of his Jeep on March 16, 1989, he was startled by a loud explosion. He inspected the Jeep and noticed wires connecting the rear wheel area to the gas tank. Police officers subsequently discovered a push button switch under the rear tire of the vehicle that was connected to a nine volt battery and electric blasting caps placed on the gas tank. The apparent purpose of this device was to cause an ignition of the blasting caps when the Jeep rolled over the switch and thereby cause the gasoline in the tank to explode.

Approximately one month after the bombing incident, Glenna Sue wrote what appears to be a draft of a letter ("Letter") that she intended to write to a Jackie Maddle.[1] The Letter was never mailed but was subsequently found in a drawer of a dresser in Glenna Sue's bedroom by a third party and was given to the police.

## ANALYSIS

### Admissibility of Co-conspirator's Statement

The defendant, by a timely objection, asserts that the Letter was hearsay and therefore inadmissible at trial. " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). The Letter contains statements of Glenna Sue Stapleton that Glenna Sue and the defendant conspired to destroy the Jeep. The government introduced the Letter into evidence in order to prove the truth of those statements. Thus, it appears that the Letter is hearsay in regard to the defendant and, pursuant to Fed.R.Evid. 802, should not have been admitted to the defendant's trial.

The government asserts that the Letter is not hearsay because it is a co-conspirator's statement. A statement is not hearsay if the statement is offered against a party and is "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed.R. Evid. 801(d)(2)(E).

■ The defendant attacks the government's assertion on two grounds. The first ground is that there is purportedly no evidence showing the existence of the conspiracy other than the Letter itself. The second ground is that the Letter was not made during the course and in furtherance of the conspiracy. Both grounds involve the determination of questions of fact preliminary to the admissibility of the Letter and such questions are to be answered by the court. Fed.R.Evid. 104(a). The court is to use the preponderance of proof standard in determining those questions of fact and may consider hearsay evidence and even the evidence being ruled upon in making its determinations. *Bourjaily v. United States*, 483 U.S. 171, 175, 178–80, 107 S.Ct.

---

1. The text of the Letter is contained in Appendix 1 of this Memorandum Opinion.

2775, 2778, 2780–1, 97 L.Ed.2d 144 (1986). The second ground will be addressed by the court first since it is dispositive of the issue.

■ The defendant asserts that the writing of the Letter was not in the course of the conspiracy. The Advisory Committee's Note to Rule 801(d)(2)(E) states that "[t]he rule is consistent with the position of the Supreme Court in denying admissibility to statements made after the objectives of the conspiracy have either failed or been achieved. *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *Wong Sun v. United States*, 371 U.S. 471, 490, 83 S.Ct. 407, 418, 9 L.Ed.2d 441 (1963)."

The Letter was purportedly written a month after the chief objective of the alleged conspiracy, the destruction of the Jeep, had taken place. The government claims that the Letter was written in the course of the conspiracy because the conspiracy had a continuing subsidiary objective of diverting inquiring law enforcement officials.

The Supreme Court in *Krulewitch* rejected the argument that because conspirators always collaborate with each other to conceal facts in order to prevent detection after either the failure or the success of the primary objective of the conspiracy, the conspiracy is considered to have continued during the period of alleged concealment, for purposes of the co-conspirator hearsay rule, and that a statement made in the furtherance of concealment, which is otherwise hearsay, is admissible. 336 U.S. at 443–4, 69 S.Ct. at 718. Thus, the court concludes that the Letter was not written in the course of the alleged conspiracy.

In any case, the court finds that the Letter was not written in furtherance of the conspiracy. Glenna Sue, in the Letter, offered the dubious altruistic reason for writing the Letter that she sought to warn its intended recipient of the potentially dangerous consequences of continuing to associate with the defendant.[2] The more plausible reason for the letter was that Glenna Sue, jilted by the defendant, sought to disrupt the relationship between the defendant and his new romantic interest, Jackie Maddle, even at the risk of being exposed as responsible for the bombing of her husband's Jeep.[3]

Neither reason why the Letter was written indicates that the Letter was written in furtherance of the alleged conspiracy. Furthermore, the government has not attempted to explain how the writing of the Letter could possibly have been intended to have been, or had the effect of being, in furtherance of the alleged conspiracy. Simply because the Letter mentions a plan of concealment devised by the defendant and Glenna Sue, and a role for Jackie Maddle to play in that plan, it does not follow that the Letter was written in furtherance of that plan. Even if such a plan involving Miss Maddle existed, and the court concludes that it did not, Miss Maddle had already unwittingly played her part and there was no need for her to be informed of it. Because the court determines, under the preponderance of proof standard, that the Letter was written neither during the course nor in furtherance of the alleged conspiracy, it concludes that the Letter was inadmissible at the trial of the defendant.

Because the court has determined that the Letter was inadmissible at the trial of the defendant, there is no need for the court to address the first ground for the defendant's objection to the admission of the Letter under Fed.R.Evid. 801(d)(2)(E).

*Sufficiency of Evidence to Sustain a Conviction*

■ The defendant asserts that in the absence of the Letter there is insufficient

---

**2.** Glenna Sue stated in the Letter that "I don't want to see harold wayne hurt you like greg hurt me," and "Jackie he don't love you he using you like I used him."

**3.** This reason is supported by following testimony: Glenna Sue called Jackie Maddle and angrily asked her about her relationship with the defendant. She met with Miss Maddle and then proceeded to drive Miss Maddle and herself to the defendant's residence. Confronting the defendant in the presence of Miss Maddle, she told him "We're both here to fuck you. Get in the car." When he approached the car, Glenna Sue asked: "Which one do you prefer?" The defendant then proceeded to kiss Miss Maddle and go back inside his residence.

evidence to sustain a conviction and therefore moves for a judgment of acquittal. The standard to be applied by the court in ruling on this motion is whether, viewing the evidence presented in the light most favorable to the government, a reasonable jury could accept the relevant and admissible evidence as adequate and sufficient to support conclusion of the defendant's guilt beyond a reasonable doubt. *See, e.g., United States v. Pope,* 739 F.2d 289, 291 (7th Cir.1984); *United States v. Gibson,* 675 F.2d 825, 829 (6th Cir.1982), *cert. denied,* 459 U.S. 972, 103 S.Ct. 305, 74 L.Ed.2d 285 (1982); *United States v. Kohlmann,* 491 F.2d 1250, 1253 (5th Cir.1974).

The court, in making this determination, must assume the truth of the government's evidence and give the government the benefit of all legitimate inferences to be drawn therefrom. *Bailey v. United States,* 416 F.2d 1110, 1112 (D.C.Cir.1969). It may not weigh the evidence, nor is it permitted to make credibility determinations. *United States v. Giampa,* 758 F.2d 928, 934–5 (3rd Cir.1985). *See also Pigford v. United States,* 518 F.2d 831, 836 (4th Cir.1975). However, in considering the motion, the court is to examine the evidence as a whole, including that offered by the defendant. *United States v. Beck,* 615 F.2d 441, 448 (7th Cir.1980). *See also United States v. Foster,* 783 F.2d 1082 (D.C.Cir.1986).

There was relevant evidence, in the absence of the Letter, that the defendant committed the offenses for which he was convicted.[4] It is uncontested that the chief object of the alleged conspiracy was actually attempted—injuring or destroying the

Jeep. Greg Stapleton, Glenna Sue's husband ("Husband"), was the owner of the Jeep and it properly may be inferred from the evidence that he was the intended victim of the bombing and that his death was the intended, or at least, the expected result. There was evidence that the defendant was involved in an adulterous relationship with Glenna Sue Stapleton at the time of the alleged conspiracy and that the Husband had recently become aware of it.

■ A jury may properly give effect to such inferences regarding human nature as common knowledge may reasonably draw from the facts directly proved. *See, e.g.,* 75 Am.Jur.2d *Trial* § 1019 (1974). It is generally recognized that an adulterous relationship, particularly when it is clandestine, is evidence of possible strong motives for murdering the cuckolded husband.[5]

Human experience has revealed that, frequently, the wife's lover has extreme feelings of resentment and jealousy directed toward the husband. Also, murdering the husband without being detected would allow immediate marriage of the adulterers and provide the wife a share of the murdered husband's estate.[6] It would also eliminate the possibility that the jealous husband, after discovering the illicit relationship, might seek revenge through physical violence against the adulterers, through public exposure of their relationship, or through a divorce with terms unfavorable to his straying wife.[7] Although all of the possible motives mentioned are probably not present in the instant case, particularly the fear of public exposure, it ap-

---

4. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence." Fed.R.Evid. 401.

5. Evidence of acts of the defendant and others which tends to prove motive is relevant and admissible for the purpose of proving motive even if those acts are criminal. *See* Fed.R.Evid. 404(b).

6. This motive for murdering the husband has been the subject of countless books and films, e.g., the recent motion picture entitled Body Heat.

7. Not only is adultery grounds for divorce, Va. Code Ann. § 20–91(1), and denial of alimony, Va.Code Ann. § 20–107.1, it is also a criminal misdemeanor. *See* Va.Code Ann. § 18.2–365. Although adulterers are rarely prosecuted, the law is apparently still in force, given that the Virginia Supreme Court has just recently recognized the continuing validity of the companion provision making fornication, i.e., sexual intercourse between unmarried persons, a criminal misdemeanor. *See Zysk v. Zysk,* 387 S.E.2d 466 (Va.1990) (court held that because fornication is illegal, *see* Va.Code Ann. § 18.2–344, one may not recover damages for herpes resulting from participating in the act of fornication).

pears that at least one is clearly consistent with, and properly may be inferred from, the evidence in the case.[8]

Besides evidence of the adulterous affair and the injury to the Jeep caused by the bomb, other incriminating evidence was admitted. While all the government's evidence must be regarded as true, some of the incriminating evidence was not introduced by the government. However, the court, as noted earlier, is to review all the evidence in the case and view the evidence in the light most favorable to the government. Therefore, the court concludes that it, for purposes of this motion, must take as true all evidence favorable to the government, even if it was not introduced by the government and was from a witness that the government had attempted to impeach. This is consistent with the view that a jury reasonably could have believed the statements favorable to the government and could have disbelieved other statements contained in the testimony of a witness.

The other evidence favorable to the government, which must be taken as true for the purposes of this motion, is as follows: The defendant said to Glenna Sue Stapleton: "I can kill Greg [the Husband] and no one will find out," and "Sue, I can blow Greg up." William Roberts, a mutual friend of the three Stapletons, testified that the defendant told him that he could rig a bomb from a battery. Glenna Sue told Ray Brooks, one of her paramours, that she could get the defendant to get rid of the Husband if she wanted.[9]

A few days before the bombing, the Husband discovered the affair. He found the defendant and confronted him about it. One day before the bombing, the defendant and Glenna Sue were together and later talked on the phone two to three times. The defendant inquired about the presence of the watch dog at the Husband's residence the day before the bombing.

When the Husband started to leave for work on March 16, 1989, Glenna Sue retreated to the back of the house as he walked out the front door to get into the Jeep. When the explosion occurred, she waited five minutes before coming to the door to see what exploded. Shortly thereafter, Glenna Sue telephoned the defendant.

Finally, Glenna Sue told Ray Brooks that the defendant did the bombing. (Testimony of Ray Brooks).[10]

Thus, there is evidence that the defendant, along with the co-conspirator, possessed a strong motive for the conspiracy and that the defendant maintained close contact with the alleged co-conspirator shortly before the objective of the alleged conspiracy was to be attempted. There is also evidence that the defendant had contemplated the objective of the conspiracy, that he had the technical ability to accomplish the objective of the conspiracy, and that he made an inquiry the day before the bombing incident, regarding the presence of a guard dog, which was peculiarly pertinent to the accomplishment of the objective of the conspiracy.

There is evidence that the co-conspirator acted suspiciously shortly before and after the bomb was detonated and that she telephoned the defendant shortly after she had called the police to report the bombing. Finally, there is evidence that the co-conspirator believed that she could get the defendant to do anything for her and that he actually accomplished the objective of the conspiracy.

After reviewing all of the evidence in the case and regarding as true the evidence favorable to the government, the court concludes that a jury could have found, beyond a reasonable doubt, the defendant guilty of the offenses charged.[11]

---

**8.** Glenna Sue testified that, during their affair, the defendant repeatedly told her that they could get married.

**9.** This appears to be hearsay in regard to the defendant's trial. However, the counsel for the defendant failed to make a timely objection.

Thus, the court will consider this statement in ruling on the motion.

**10.** *See supra,* note 9.

**11.** This conclusion is based on the assumption that the Letter was inadmissible.

## NEW TRIAL

■ If a trial court is convinced that it made an error which unfairly prejudiced the trial of the accused, it is its duty to immediately discharge the defendant and grant a new trial, *sua sponte. Ex parte Cobb,* 448 F.Supp. 886, 887 (D.S.C.1977), *aff'd sub nom. United States v. Cobb,* 568 F.2d 774 (4th Cir.1978) (TABLE No. 77–1652). The court concludes that the admission of the Letter at the trial of the defendant, without a limiting instruction to the jury, was improper and unfairly prejudiced his trial. Therefore, the court, *sua sponte,* will grant the defendant a new trial on the charges for which he was convicted.

## CONCLUSION

The court has found that the admission of the Letter to the trial of the defendant was improper and unfairly prejudiced his trial. However, the court concludes that, even in the absence of the Letter, a reasonable jury could have found the defendant guilty of the crimes for which he was convicted. Therefore, the court will deny the defendant's motion for judgment of acquittal. However, because the Letter was erroneously admitted and unfairly prejudiced the defendant's trial, the court, *sua sponte,* will grant him a new trial on the charges for which he was convicted.

## APPENDIX 1

The following is the text of the Letter: I feel like I can make men do any thing for me its like a spell I have over men. here is the receipe pussy yep yeall if your have the right recipe you can do or make anything look how long it took me to find out that (I feel like I can't breath it must be another personality comeing over me harold wayne might my actions but he just knows one of my [page] personality ha, ha, he thought he fucked me over know I thru with him. I got him to do what I wanted know I threw with him. see I told you I can put a spell on men even the fortune teller told me that I have a spell over men that I could get what I wanted from them [page] yell he did what I wanted now I threw with him now who will be the victim next ha you better watch he is crazy he did try to blow greg he did what I wanted but see I not crazy but he is he is the one that put that bomb in greg jeep for me. see I made him think [page] that he love me I made him think that we was going to get married and have 2 kids Jackie he don't love you he using you like I used him The reason I wated so long to tell you is because I know you wouldn't believe me I knew you would think I was lying trying to break [page] and besides I didn't know if I could trust you or not but Jackie I like you I think you are a sweet girl and I don't want to see harold wayne hurt you like greg hurt me. Jackie what ever you do you can't say nothing because greg deserve what harold did try to do to him he use to beat me up all the time he broke my nose once he use rape me all the time cause I could not stand to have sex with him. see the reason he acting like he loves you is because he wants the police think that he used me so they won't never think he try to killed greg. now Jackie they ain't no use in asking him about it [page] because he will denied everything we talk on the phone all of the time and the other day I told him I didn't love him that I was using him to get away from greg then I found out how crazy he was so that when I plotted to get him to pay greg back for everything he did to me. see we plan everything I knew when he started seeing you. we plan to break up and have a witness to prove it—you [page] see everything was going OK untill he caught me with greg the other day then he found out about Mark a guy I been fooling around with so hell I just told him the truth that I didn't love him. he said he was going to marry you and because he could get you to lie and do anything for him. He afraid I going to admit to what he tried to do to greg.