KETHLEDGE, Circuit Judge,
concurring in the judgment in part, and dissenting in part.
Moldowan puts many labels on his claims, but his claim against Officer Ingles is essentially that he should have disclosed, presumably to the prosecutor, the fact and contents of Jerry Burroughs’ alleged statement to Ingles. I agree with the majority’s conclusion that, under the standard of review applicable here, Moldowan is entitled to proceed with that claim. But I respectfully disagree with how the majority gets there.
I.
A.
With a significant caveat, the majority gets there by extending the no-fault regime of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) — or at least something functionally “analogous” to it, Maj. Op. at 379 — to police officers. The caveat, as discussed below, may as a practical matter render insignificant the differences between the majority’s approach and my own. I think it important, however, to explain why extending the Brady regime to police officers would be both unprecedented and unwise.
“The Brady doctrine imposes an absolute duty on the prosecutor to produce all materially favorable evidence in the State’s possession.” Villasana v. Wilhoit, 368 F.3d 976, 979 (8th Cir.2004). By its terms, therefore, Brady applies to prosecutors, not police officers. Brady itself, of course, did not involve police conduct at all, but rather concerned a criminal defendant’s attempt to obtain a new trial based upon the prosecution’s suppression of evidence favorable to him. In granting Brady partial relief from his conviction, the Court held “that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” 373 U.S. at 87, 83 S.Ct. 1194 (emphasis added). Thus the Brady duty, as stated by the Brady Court, was imposed on the prosecutor; and in cases since, “[t]he Supreme Court has never imposed this absolute duty on law enforcement officials other than the prosecutor.” Villasana, 368 F.3d at 979; see also Jean v. Collins, 221 F.3d 656, 660 (4th Cir.2000) (en banc) (Wilkinson, C.J., concurring in the judgment) (“The Supreme Court has always defined the Brady duty as one that rests with the prosecution”) (collecting Supreme Court cases); Lindsay v. Bogle, 92 Fed.Appx. 165, 170 (6th Cir.2004) (“the Brady obligation applies only to prosecutors”).
The imposition of that same absolute duty on police officers, therefore, would represent an extension of Brady that the Supreme Court itself has not made in the 46 years since it rendered the decision. I do not think the omission is fortuitous. Not only by its terms, but also by its content, the Brady duty is uniquely tailored to prosecutors. It applies to excul *402 patory evidence that is “material”; and the Supreme Court says that “[s]uch evidence is material ‘if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding [that is, the criminal trial] would have been different.’ ” Strickler v. Greene, 527 U.S. 263, 280, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)). Whether a particular piece of evidence would have changed the result of a criminal trial, of course, is a judgment that prosecutors, not police officers, are trained to make. The Eighth Circuit so observed in refusing to extend Brady to police officers:
It is logical to impose Brady’s absolute duty on the government official who will present the State’s case at trial lie., the prosecutor], who can be expected to gather material evidence from law enforcement agencies, and who is in the best position to evaluate whether evidence must be disclosed because it is materially favorable to the defense.
Villasana, 368 F.3d at 979. And so too, in rejecting the same extension, did a plurality of the en banc Fourth Circuit:
The Brady duty is framed by the dictates of the adversary system and the prosecution’s legal role therein. Legal terms of art define its bounds and limits. The prosecutor must ask such lawyer’s questions as whether an item of evidence has “exculpatory” or “impeachment” value and whether such evidence is “material.” It would be inappropriate to charge police with answering these same questions, for their job of gathering evidence is quite different from the prosecution’s task of evaluating it.
Jean, 221 F.3d at 660 (Wilkinson, C.J., concurring in the judgment).
The extension is also unnecessary. The Brady rule already “encompasses evidence ‘known only to police investigators and not to the prosecutor.’ ” Stricklen, 527 U.S. at 280-81, 119 S.Ct. 1936 (quoting Kyles v. Whitley, 514 U.S. 419, 438, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). But it is the prosecutor, not the police themselves, who bears an absolute duty to disclose it. Indeed, even as to evidence solely in police possession — which is the kind of evidence at issue here — the Supreme Court has specifically refused to impose the Brady duty directly upon the police, saying that to do so “would ... amount to a serious change of course from the Brady line of cases.” Kyles, 514 U.S. at 438, 115 S.Ct. 1555. Instead, to comply with Brady, “the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police.” Id. at 437, 115 S.Ct. 1555 (emphasis added). And any breach of that duty, no matter how diligent the prosecutor’s efforts, entitles the criminal defendant to a new trial; “the prosecution’s responsibility for failing to disclose known [even only to the police], favorable evidence rising to a material level of importance is inescapable.” Id. at 438, 115 S.Ct. 1555. Moreover, as discussed below, no one disputes that police officers already have an independent duty — though not a Brady duty — not to conceal materially exculpatory evidence in bad faith. Thus, as a practical matter, extending Brady to police officers would accomplish little with respect to the fairness of criminal trials that current law does not already accomplish.
What that extension would accomplish, rather, is a significant increase in lawsuits against police officers. Prosecutors enjoy absolute immunity for actions taken in their official capacities, see Imbler v. Pachtman, 424 U.S. 409, 413-16, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), whereas police officers do not. Police officers, therefore, would become the special object of attention from criminal defendants who believe *403 that allegedly exculpatory evidence should have been, but was not, disclosed to their counsel prior to trial. And in this respect the police would present a large target. Police officers, particularly ones like Ingles who investigate violent crime in the field, obtain a great deal of information in the course of an investigation. Some of what they obtain, like shell casings, is tangible, but much of it, like things they may have seen or heard in the course of their activities, is not. As a practical matter, an officer cannot preserve, and thus pass on to the prosecutor, everything he sees, hears, or learns in the course of investigating a crime. He instead has to exercise judgment about what seems important and what does not. But if an officer bears an absolute duty to disclose materially exculpatory evidence, all of the information thus filtered by an officer’s judgment, even in the purest good faith, potentially becomes the basis of a lawsuit against him. An officer’s failure to recognize an exculpatory clue, for example, and thus to pass it on to the prosecutor, would be a violation of the Due Process Clause. That the officer was merely negligent, or even that no reasonable officer could have understood the clue’s significance at the time, would be no defense; the Brady duty is absolute. So if the clue could have changed the result of the criminal defendant’s first trial, the defendant would not only get a second one; he would be entitled to have the officer pay him for his troubles as well.
This exposure would arise not only from evidence considered in isolation. We must consider evidence cumulatively in determining whether it is materially exculpatory for purposes of Brady, see Kyles, 514 U.S. at 436, 115 S.Ct. 1555, so an officer’s failure to connect the exculpatory dots, as well, would render him liable for damages. Two, or indeed any number of, pieces of information, that might have seemed unimportant to a reasonable investigator at the time, but that present an exculpatory picture after the fact when arranged just so, would be grounds for a suit.
Once unleashed, these suits would be very difficult to stop short of trial. For in these cases the refuge of qualified immunity would be illusory. Qualified immunity requires that the officer violate “clearly established” constitutional rights to be liable, with the idea being that, by definition, such liability is usually limited to officers who knew or should have known they were violating the law. See Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). But it does an officer little good to be aware of the existence of a generic duty, if, when acting in good faith and to the best of his ability, he is not aware that he is breaching it. And because the Brady duty is absolute, a eriminal-defendant-turned-plaintiff would need not prove that the officer knew — or even that any reasonable officer would have known — that the officer had a duty to disclose the particular information at issue. Foreknowledge of illegality would be beside the point; and thus, as a practical matter, qualified immunity would be no immunity at all.
B.
For good reason, then, no federal appellate court has extended Brady’s no-fault regime to police officers. Two circuits have addressed the issue directly; and both of them pointedly refused to make the extension. In Porter v. White, 483 F.3d 1294 (11th Cir.2007), the court “h[e]ld that the no-fault standard of care Brady imposes on prosecutors in the criminal or habeas context has no place in a § 1983 damages action against a law enforcement official in which the plaintiff alleges a violation of due process.” Id. at 1306. The court thus concluded that “a negligent act or omission cannot provide a basis for *404 liability in a § 1983 action seeking compensation for loss of liberty occasioned by a Brady violation.” Id. at 1308. And in Villasana, the Eighth Circuit held that a “bad faith standard should likewise apply to due process claims that law enforcement officers preserved evidence favorable to the defense but failed to disclose it.” 368 F.3d at 980.
None of the cases that the majority cites actually imposes Brady’s absolute duty of disclosure upon police officers. Most of them instead find liability for precisely the sort of bad-faith conduct that would give rise to liability under virtually any standard. See, e.g., Jones v. City of Chicago, 856 F.2d 985, 995 (7th Cir.1988) (finding liability for “retaining records in clandestine files deliberately concealed from prosecutors and defense counsel”); Hart v. O’Brien, 127 F.3d 424, 446 (5th Cir.1997) (permitting a § 1983 claim “against a police officer who, after learning of patently exculpatory evidence, deliberately fails to disclose it to the prosecutor”) (internal quotation marks omitted).
Nor do our own decisions in Spurlock v. Satterfield, 167 F.3d 995 (6th Cir.1999), and Gregory v. City of Louisville, 444 F.3d 725 (6th Cir.2006), provide support for imposing such an absolute duty upon police officers. Spurlock was not a failure-to-disclose case at all, but instead involved claims of fabricated evidence. See 167 F.3d at 1005. And we decided Gregory emphatically on jurisdictional grounds. See 444 F.3d at 743-44 (holding that, because the defendant officer’s “sole argument with the district court’s denial of qualified immunity goes to whether there exists a genuine issue of fact for trial ... this Court lacks jurisdiction to entertain [the officer’s] appeal from the district court’s denial of qualified immunity for Plaintiffs claim of Brady violations”) (emphasis added).
Still more revealing is Moldowan’s heavy reliance — and to a lesser extent the majority’s' — on our decision in Hilliard v. Williams, 516 F.2d 1344 (6th Cir.1975), vacated in part, 424 U.S. 961, 96 S.Ct. 1453, 47 L.Ed.2d 729 (1976). The failure-to-disclose claim there was asserted against the defendant prosecutor, Williams, not the defendant police officer, Clark. See id. at 1349 (“Williams withheld an F.B.I. report indicating that there was no blood on [plaintiffs] jacket”). The Supreme Court vacated our decision as to that claim on direct review. The other claim in the case, against Officer Clark, was based upon his “deceptive and misleading testimony ” at Hilliard’s criminal trial. Id. (emphasis added). Which is to say, Hilliard was not a police-disclosure case at all. Moreover, as to Clark, we thought “it plain that a law enforcement officer who knowingly gives evasive, misleading, and deceptive testimony during a criminal trial cannot escape civil liability[.]” Id. That holding too has since been invalidated by the Supreme Court. See Briscoe v. LaHue, 460 U.S. 325, 328, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (“all witnesses — police officers as well as lay witness — are absolutely immune from civil liability based on their trial testimony in judicial proceedings”). Hilliard is thus an empty husk of a decision, which did not present the issue before us in the first place, and which cannot possibly support extending Brady to police officers.
C.
1.
The issue before us today, as the majority correctly observes, is one of law rather than policy. And I would decide it as such. The standard that I would apply— and the one the Eighth and Eleventh Circuits apply — is the one that the Supreme Court has so far always applied to deter *405 mine officer liability in the “area of constitutionally guaranteed access to evidence”: namely, bad faith. Arizona v. Youngblood, 488 U.S. 51, 55, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (quoting United States v. Valenzuela-Bernal, 458 U.S. 858, 867, 102 S.Ct. 3440, 73 L.Ed.2d 1193 (1982)). This standard requires proof that the officer engaged in “a conscious effort to suppress exculpatory evidence.” California v. Trombetta, 467 U.S. 479, 488, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). That requirement “both limits the extent of the police’s obligation ... to reasonable bounds and confines it to that class of cases where the interests of justice most clearly require it, ie., those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant.” Youngblood, 488 U.S. at 58, 109 S.Ct. 333.
Notwithstanding this plain language, the majority reads Youngblood to mean that no showing of bad faith is required to establish a violation of due process by the police “where ‘material exculpatory evidence’ is concerned[.]” Maj. Op. at 385. But Youngblood does not quite say that. What Youngblood says is that “[t]he Due Process Clause of the Fourteenth Amendment, as interpreted in Brady, makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence.” 488 U.S. at 57, 109 S.Ct. 333 (emphasis added). That statement does not impose an absolute duty upon police officers — as shown above, there was no police conduct at issue in Brady — but is instead merely a restatement of the prosecutor’s absolute duty to disclose materially exculpatory evidence to the defendant. The evidence at issue in Youngblood was only “potentially” exculpatory, however, id. at 58, 109 S.Ct. 333, so it fell outside the scope of the prosecutor’s absolute duty under Brady. The Court therefore considered whether the police had violated a duty “over and above” that imposed on the prosecutor, id. at 56, 109 S.Ct. 333, by failing to preserve that evidence. And the Court held that, to establish such a violation, Youngblood had to prove that the police destroyed the evidence in “bad faith[.]” Id. at 58, 109 S.Ct. 333.
But that holding does not mean that the police violate a defendant’s due-process rights when, in the absence of bad faith, they fail to preserve or disclose materially exculpatory evidence. To the contrary, as the Youngblood Court’s reiteration of the Brady duty makes clear, the failure to provide such evidence to the defendant would merely amount to a violation of the prosecutor’s absolute duty to disclose such evidence. See also Kyles, 514 U.S. at 437, 115. S.Ct. 1555 (“the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in this case, including the police”) (emphasis added). Nor does the Supreme Court’s holding in Trombetta impose on police officers an absolute duty to preserve or disclose materially exculpatory evidence. Instead, the Supreme Court “rejected [Trombetta’s] argument for several reasons!,]” the “first” of which was that “ ‘the officers here were acting in good faith and in accord with their normal practice[.]’ ” Youngblood, 488 U.S. at 56, 109 S.Ct. 333 (quoting Trombetta, 467 U.S. at 488, 104 S.Ct. 2528) (emphasis added; internal quotation marks omitted). That the Youngblood Court discussed the bad-faith standard in connection with potentially exculpatory evidence merely reflects the fact that, had the evidence there been materially exculpatory, there would have been no need to discuss police duties in the first place. Because in that event the prosecutor would have violated his duty under Brady.
2.
There remains the question whether Moldowan’s claim against Ingles can pro *406 ceed under Youngblood’s bad-faith standard. That claim is based upon Ingles’ failure to convey to the prosecutor the substance of Burroughs’ statement to Ingles. Two aspects of Burroughs’ testimony, in my view, are critical. First, he testified that he had personally heard two men — neither of whom was Moldowan— discussing Fournier’s rape while standing outside the house next to his house. That testimony, when viewed (as it must be) in the light most favorable to Moldowan, could be interpreted as meaning that the two men essentially admitted their involvement in the crime. Second, Burroughs testified that he told “my story” to Ingles. That reference, when viewed in that same light, could be understood to encompass all of Burroughs’ story regarding the crime, including the two mens’ admission on the sidewalk next door. Thus, when viewed in the light most favorable to Moldowan, and as a whole, Burroughs’ testimony could be read to mean that he told Ingles that two other men had essentially admitted to committing the crime Ingles was investigating.
There is no direct evidence that Ingles withheld Burroughs’ statement in bad faith. And I think courts should be wary of inferring bad faith from the mere fact of an officer’s failure to disclose evidence, lest the bad-faith standard become in practice an absolute one. But I think that, under the circumstances present here, a jury could infer bad faith from Ingles’ failure to disclose Burroughs’ statement — whose existence, to be fair, Ingles disputes — to the prosecutor. Of course, a jury would be free not to make that inference, in part because they might choose to understand Burroughs’ testimony in a light less favorable to Moldowan, or not to believe it at all. Given our standard of review, however, we are not so free. I therefore agree that Moldowan is entitled to proceed with his claim against Ingles.
3.
As that bottom-line agreement suggests, my disagreement with the majority may prove larger in theory than in practice. To establish an officer’s conscious suppression of materially exculpatory evidence- and thus his bad faith-a plaintiff must prove, among other things, “the police’s knowledge of the exculpatory value of the evidence at the time” the criminal defendant says it should have been disclosed. Youngblood, 488 U.S. at 56 n. *, 109 S.Ct. 333. And therein lies the common ground between my approach and that of the majority. Notwithstanding its rather extended defense of imposing an absolute duty of disclosure upon police officers, and its rejection of a bad-faith standard in this context, and its declaration that “ ‘Brady creates a singular constitutional duty, which prosecutors and police officers are capable of breaching in factually different ways[,]’ ” Maj. Op. at 380 (quoting Jean, 221 F.3d at 656 (Murnaghan, J., dissenting)), the majority, to its credit, does not simply extend Brady’s absolute duty of disclosure to police officers. The majority instead recognizes a “practical concern that the police cannot be held accountable for failing to divine the materiality of every possible scrap of evidence.” Maj. Op. at 388. And the majority thus holds that a police officer does not breach his duty of disclosure unless the “ ‘exculpatory value’ ” of the undisclosed evidence is “ ‘apparent’ ” to him. Maj. Op. at 389 (quoting Trombetta, 467 U.S. at 489, 104 S.Ct. 2528). When applying that rule to Moldowan’s claim against Officer Schultz, the majority holds — and I agree — that Schultz was entitled to summary judgment because “there is no evidence in the record” that he “had any knowledge whatsoever about the nature of the evidence that he destroyed.” Maj. Op. at 392.
*407 Thus, in the end, the majority extends Brady’s duty of absolute disclosure to police officers, but limits the scope of that duty to evidence whose materially exculpatory value was known to the particular officer sued. I think the better approach would be simply to apply the Supreme Court’s bad-faith rule, rather than a modified version of an absolute rule designed for prosecutors. In practice, however, the latter rule will probably operate as the functional equivalent of the former.
D.
With one exception, I otherwise concur in the majority’s disposition of the remaining claims in the case. The exception concerns Count 26, in which Moldowan claims under § 1983 that the City is liable for Schultz’s destruction of evidence. “A municipality ... cannot be liable under § 1983 absent an underlying constitutional violation by its officers.” Blackmore v. Kalamazoo County, 390 F.3d 890, 900 (6th Cir.2004). As discussed above, Schultz did not violate Moldowan’s constitutional rights when he disposed of the evidence from Moldowan’s first trial. The City therefore cannot be liable under § 1983 on this claim.
For these reasons, I concur partially in the judgment, and respectfully dissent in part.