UNITED STATES of America, Plaintiff-Appellee,

v.

Kenneth D. POPE, Defendant-Appellant.

No. 83–2630.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1984.
Decided July 20, 1984.

---

Joseph W. Ruppert, Bowman, Crowell & Teeters, Fort Wayne, Ind., for defendant-appellant.

Donald P. Moroz, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

Defendant Kenneth Pope was convicted, following a jury trial, of aiding and abetting the false making and forging of an endorsement on a United States income tax-refund check, in violation of 18 U.S.C. §§ 2 and 495.[1] We affirm.

## I.

The relevant evidence, viewed in the light most favorable to the prosecution, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), is as follows. Anita L. Betty received her United States income tax-refund check on February 4, 1983. Her daughter, Carla Rose, found the check and took it, without Betty's permission or knowledge, to the house of a friend, Connie White. While Rose was at White's house, White's cousin, Joseph Williams, saw the check and told Rose that the three of them were going to cash it. Rose, White and Williams attempted to cash the check that day without success.

The next day, Williams returned to White's house (where Rose had spent the night) with the defendant, Kenneth Pope. Williams told Pope that Rose had a check

---

**1.** 18 U.S.C. § 2 (1982) provides:

    (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

    (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 495 (1982) provides in part:

    Whoever falsely makes, alters, forges, or counterfeits any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States or any officers or agents thereof, any sum of money;

    Shall be fined not more than $1,000 or imprisoned not more than ten years, or both.

she was trying to cash, showed Pope the check and asked him where they could cash it. Pope said that he knew a woman who had a white baby and indicated that they might be more successful in cashing the check with the baby. Pope, Williams, White, Rose and another man tried to borrow the baby to aid in the check-cashing scheme, but the mother refused.

The group then went to several banks to try to cash the check, but was unable to do so and ended up at Pope's house. The defendant went inside and returned with a blank Social Security card. Pope and the others then drove to the Hansel Center in South Bend. Rose showed Pope and Williams the check, which had her mother's name and Social Security number on it, and the two of them went inside while Rose waited in the car with the others. Pope had an acquaintance of his, who worked at the Center, type Betty's name and Social Security number on the formerly-blank Social Security card. When Pope returned to the car, he told Rose to sign her mother's name on the card.

The next stop was Jack's Furniture Mart in South Bend. Rose and Williams went in first and Pope entered the store several minutes later. Rose and Williams picked out some furniture, paid for it with the tax refund check which Rose endorsed in her mother's name (using the forged Social Security card as identification) and received the difference between the amount of the check and the value of the furniture in change.

Pope, Williams and another man returned the next day to pick up the furniture and while the furniture was being loaded the store's owner was advised that the check was stolen and confronted Williams. The three men fled with the furniture, which they later sold.

## II.

■ Defendant's principal argument on appeal is that the trial court erred in denying his motion for acquittal at the conclusion of the presentation of the evidence. A motion for acquittal may not be granted if, viewing the evidence in the light most favorable to the prosecution, there is relevant evidence from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. *United States v. Roman*, 728 F.2d 846, 857 (7th Cir.1984). When applying this standard, a court must, of course, keep in mind that it is the jury which has the exclusive authority to assess the witnesses' credibility, resolve evidentiary conflicts and draw reasonable inferences from the evidence presented. *Id.*

Pope contends on appeal that the evidence at trial supports, at most, a charge of aiding and abetting uttering and publishing a forged check [2] rather than aiding and abetting the forging of the endorsement on the check. We disagree.

■ The aiding and abetting statute, 18 U.S.C. § 2 (1982), punishes as principals those who aided and abetted a crime. *United States v. Galiffa*, 734 F.2d 306, 312 (7th Cir.1984). In order to find someone guilty of aiding and abetting a crime, the evidence must demonstrate—according to Judge Learned Hand's formulation, which this circuit has adopted—that the defendant was associated with a criminal venture, that he participated in it as something he wished to bring about and that he sought by his actions to make it succeed. *United States v. Peoni*, 100 F.2d 401, 402 (2d Cir. 1938); *Galiffa*, 734 F.2d at 311. Thus, the prosecution must prove (1) association, i.e., that the defendant shared the criminal intent of the principal; and (2) participation, i.e., some overt act designed to aid in the venture's success. *United States v. Beck*, 615 F.2d 441, 448–49 (7th Cir.1980); *United States v. Greer*, 467 F.2d 1064, 1069 (7th Cir.1972), *cert. denied*, 410 U.S. 929, 93 S.Ct. 1364, 35 L.Ed.2d 590 (1973). Proof of the requisite state of mind need not be by direct evidence; it may be inferred from

---

**2.** Defendant was acquitted of this charge by the jury. Uttering and publishing a forged check is prohibited by 18 U.S.C. § 495 (1982).

the surrounding facts and circumstances. *Beck*, 615 F.2d at 449.

■ We believe there was sufficient evidence from which a rational jury could have inferred that Pope possessed the unlawful intent required for conviction of the principal offense. There was evidence that Pope (1) knew that Rose wanted to cash a check; (2) was shown the check, which bore Betty's name; (3) attempted to borrow a baby to make it easier to cash the check; (4) went with Rose to several banks where she tried unsuccessfully to cash the check; (5) provided a blank Social Security card; (6) had Betty's name and Social Security number typed on the card; (7) told Rose to sign her mother's name on the card; and (8) was in the store at the time Rose forged her mother's signature on the check. In the face of this rather impressive array of evidence, we have no difficulty holding that a rational jury could infer that the defendant knew that his cohorts were attempting illegally to cash a check which belonged to Anita L. Betty, without her permission or knowledge. There would have been no reason to have Rose sign her mother's name on a false Social Security card or try to borrow a baby if the participants in this venture wanted to cash the check legally.

There was also evidence from which a rational jury could find that the defendant committed an overt act to aid and abet the forgery. Pope contends that providing Rose with identification was essential to uttering or publishing the check (because it could not be cashed without identification) but was not connected to Rose's forgery. Defendant, citing *United States v. Greer*, claims that he may not be found guilty of aiding and abetting forgery when the forgery was only a foreseeable consequence of providing the false Social Security card. The defendant in *Greer* was charged with aiding and abetting interstate transportation of stolen goods. Greer's participation in the crime was limited to providing the thieves with information about the existence and location of the stolen property and attempting to claim the proceeds after the crime was committed. There was no evidence that Greer knew of the thieves' travel plans or the ultimate destination of the goods. This court ruled that allowing the jury to infer intent to aid in interstate transportation of stolen property from Greer's intent to conspire to steal the goods because the former crime is a foreseeable consequence of the latter "is to base criminal liability only on a showing of negligence rather than criminal intent." 467 F.2d at 1069. We stated that "where the relationship between the defendant's acts and the ultimate crime for which he is charged is as attenuated as it is in the instant case, we would require some showing of specific intent to aid in, or specific knowledge of, the crime charged." *Id.*

Pope's conviction is not inconsistent with *Greer*. We noted there that the "requisite intent may be inferred when the defendant's physical participation in the course of events is substantial." *Id.* The facts developed at trial demonstrate that Pope was involved intimately in the forgery. Rose's use of the false identification to forge the check was much more than a "foreseeable consequence." Given the extent of Pope's knowledge (Pope knew that Rose was attempting to cash a check which bore her mother's name) and the degree of his involvement (particularly in accompanying Rose to a number of banks where she was unable to cash the check, procuring the blank Social Security card, having Betty's name typed on the card, instructing Rose to sign the card with her mother's name and being in the store while Rose forged her mother's signature), the jury could reasonably infer that Pope knew that the false identification he supplied would be used to aid in the forgery.[3]

**3.** Our holding is supported by the Second Circuit's decision affirming a conviction for aiding and abetting forgery of stolen government bonds and money orders in *United States v. Calabro*, 467 F.2d 973 (2d Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973). The court described the prosecution's burden of proof as follows:

... the government had to show at a minimum, to sustain the conviction of [defendant]

Viewing the evidence in the light most favorable to the government, we hold that a rational trier of fact could have found Pope guilty of aiding and abetting forgery of the check. There was more than sufficient evidence to prove that Pope possessed the requisite criminal intent and committed an overt act designed to contribute to the venture's success. *Cf. Galiffa.*

### III.

Pope's other argument on appeal is that the trial court committed reversible error in not striking the testimony of Rose after she refused to answer a series of questions asked of her by Pope's attorney on cross-examination. Defendant asserts that his Sixth Amendment right to receive an adequate opportunity for effective cross-examination was violated by Rose's recalcitrance and that reading Rose's grand jury testimony into the record was an ineffective substitute. *See United States v. Navarro,* 737 F.2d 625, 630 (7th Cir.1984); *United States v. Key,* 725 F.2d 1123, 1126 (7th Cir.1984); *United States ex rel. Nance v. Fairman,* 707 F.2d 936, 941 (7th Cir. 1983). Defendant's argument is untenable. Although Rose initially refused to answer defense counsel's questions, she responded in full to the questions asked of her (over four dozen by our count) subsequent to the reading of her grand jury testimony. Our review of the record indicates that Pope's Sixth Amendment rights were not violated.

For the foregoing reasons, defendant's conviction is AFFIRMED.

as an aider and abettor of the forgery, that he knew that the identification he supplied the group was to be used in a transaction involving forged bonds. Though details of the actual cashing would not have to be known to him, a generalized suspicion of illegal use of the identification would not suffice. 467 F.2d at 982. The prosecution satisfied this burden in the instant case.