Jarvis ROBINSON, individually and on behalf of the heirs at law of Jeffrey Robinson, deceased, Plaintiff,

v.

CITY OF MEMPHIS, et al., Defendants.

No. 02–2878 Ml/P.

United States District Court, W.D. Tennessee, Western Division.

June 18, 2004.

Buckner Wellford, Esq., Matthew C. Hardin, Thomason Hendrix Harvey Johnson & Mitchell, Memphis, TN, for Plaintiff.

Henry L. Klein, Esq., Apperson Crump & Maxwell, Plc, Thomas E. Hansom, Esq., Debra L. Fessenden, Esq., Hansom Law Office, Memphis, TN, for Defendants.

## ORDER GRANTING AND PART AND DENYING IN PART OFFICERS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

McCALLA, District Judge.

This case is before the Court on the Motion to Dismiss and/or in the Alternative for Summary Judgment of Defendants Berryhill, Simcox, Boyce, Bonner, and Lucas to Amended Complaint, filed February 2, 2004. Plaintiff responded in opposition on March 5, 2004. The Officers filed a reply on May 4, 2004.

### I. Background

This suit arose from the shooting of Jeffrey Robinson during the execution of a search warrant by the Vice–Narcotics Unit of the Memphis Police Department. Plaintiff filed suit against the City of Memphis and the Officers involved in the search. Judge Mays outlined the factual allegations pertinent to the Officers in his Order Granting in Part and Denying in Part the Motion to Dismiss of Defendant Mark Lucas, Granting in Part and Denying in Part the Motion to Dismiss of Officers Hill, Cox, Boyce, Bonner, Crutchfield, Wallace, and Gonzalez, entered June 25, 2003. Judge Mays' June 25, 2003 Order dismissed all claims against the Officers, with the exception of Plaintiff's 42 U.S.C. § 1983 claim that they violated decedent's Fourth Amendment rights.[1]

---

1. With respect to the City of Memphis, Judge Mays entered an Order Granting in Part and Denying in Part the Motion to Dismiss of the City of Memphis on June 23, 2003.

This Court subsequently permitted Plaintiff to amend his complaint. The Amended Complaint dismissed Officers Crutchfield, Wallace and Gonzalez from the action.[2] The Amended Complaint contains new allegations concerning the policies and procedures of the Memphis Police Department, but does not add any new material facts regarding the Officers' actions at the time of the shooting. Plaintiff did, however, add an allegation that, although the decedent was paralyzed for the six weeks before he died as a result of the shooting, the decedent was conscious and aware of his surroundings, causing him severe mental and emotional anguish.

In addition to restating his Fourth Amendment § 1983 claim in the Amended Complaint, Plaintiff attempts to reassert against the Officers certain § 1983 claims that had previously been dismissed from the original Complaint. Plaintiff also attempts to reassert a claim for negligence against Detective Lucas. Based on the additional allegations in the Amended Complaint regarding the decedent's mental anguish, Plaintiff also reasserts his claim for outrageous conduct against all of the Officers.

## II. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss the plaintiff's complaint "for failure to state a claim upon which relief can be granted." When considering a 12(b)(6) motion to dismiss, a court must treat all of the well-pleaded allegations of the complaint as true, *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir.1992), and must construe all of the allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683,

40 L.Ed.2d 90 (1974). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court has explained that the standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**2.** Prior to the filing of the Amended Complaint, the Officers had filed a renewed motion for summary judgment on January 5, 2004. As the Plaintiff has now filed an Amended Complaint and the Officers have submitted the instant motion to dismiss and/or for summary judgment, the Court DENIES the January 5, 2004 motion as moot.

## III. Analysis

The Court will address each aspect of the Officers' motion to dismiss or for summary judgment in turn.

### A. 42 U.S.C. § 1983 Claims

#### 1. Fifth and Fourteenth Amendments

For the reasons previously stated on page 10 of Judge Mays' June 25, 2003 Order, as well as Plaintiff's acknowledgment in his response that a Fifth Amendment claim is not viable, the Court DISMISSES the Fifth and Fourteenth Amendment claims in Counts I and II of the Amended Complaint.

#### 2. Fourth Amendment

The Officers' move to dismiss each of Plaintiff's causes of action under the Fourth Amendment.

##### a. Unreasonable search

The Officers first move to dismiss a claim that they executed an unreasonable search. The Officers assert the existence of a valid search warrant as a defense to this purported claim. However, the Court does not discern an unreasonable search claim from the Amended Complaint. Plaintiff also states in his response that this is not the basis for any of his claims. (Pla.'s Resp. at 8.) Accordingly, the Court need not address this aspect of the Officers' motion.

##### b. Excessive force

All of the Officers with the exception of Officer Lucas move to dismiss the excessive force claim because they can not be held liable for the excessive force allegedly used by Officer Lucas. Plaintiff acknowledges that his excessive force claim pertains only to Officer Lucas. (*Id.*) Therefore, the Court need not address this aspect of the Officers' motion.

Officer Lucas separately moves to dismiss the Fourth Amendment excessive force claim. In order to set forth a proper Fourth Amendment claim, the right an official is alleged to have violated must have been clearly established. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The right to be free from the use of excessive force under the Fourth Amendment is clearly established. *Adams v. Metiva,* 31 F.3d 375, 386–387 (6th Cir.1994). More specifically, an individual has a clearly established right not to be shot where he or she poses no threat to a pursuing police officer. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1045 (6th Cir.1992). In evaluating whether Officer Lucas used excessive force when he shot the decedent, the Court reviews Officer Lucas' actions to determine if they were " 'objectively reasonable' in light of the facts and circumstances." *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

Taking all of the facts in the light most favorable to Plaintiff, the Court must assume that Officer Lucas battered down the door to the bedroom where the decedent was located in order to execute the search warrant. Officer Lucas did not identify himself as a police officer before breaking down the door. At the time Officer Lucas gained access to the room, the decedent was naked and unarmed. The decedent reached for a shirt and Officer Lucas shot him. This version of the facts is supported by the deposition testimony of Carolyn Epps. The deposition testimony of the medical examiner, Dr. O.C. Smith, also supports Plaintiff's case. Dr. Smith evaluated Officer Lucas' statement that the decedent was near the door and approaching him with a box cutter at the time of the shooting. However, after he was shot, the decedent was found facing the wall in the back corner of the room. Dr. Smith testi-

fied in his deposition that if the decedent had been approaching Officer Lucas at the door, it would not have been possible for the decedent to end up crouched on the floor in the back of the room. The decedent received a spinal cord injury from the bullet and would have been immediately paralyzed and without the ability to voluntarily move his legs.

A reasonable officer would know that a naked unarmed man standing at the back of a room poses no threat to the officer and should not be shot. Plaintiff's version of the facts raises a question as to whether Officer Lucas' decision to shoot the decedent was objectively unreasonable and violated the decedent's Fourth Amendment right to be free from the use of excessive force. Therefore, the Court DENIES Officer Lucas' motion for summary judgment as to the Fourth Amendment excessive force claim.

### c. Falsifying evidence/False arrest [3]

██ With regard to Plaintiff's claims that the Officers fabricated evidence and falsely arrested the decedent without probable cause based on the fabricated evidence, the Officers offer several arguments in favor of summary judgment.

The Officers maintain that Plaintiff offers nothing to support a claim that they fabricated evidence, other than Ms. Epps' testimony that the decedent did not have a box cutter at the time he was shot. In spite of her testimony, the Officers believe they are entitled to summary judgment on this claim. The Court is of the opinion that her testimony that the decedent did not have a box cutter at the time he was shot is sufficient to defeat summary judgment on the falsification of evidence claim.

Moreover, although the Officers never mention the medical examiner's findings, the Court notes that Dr. Smith testified in deposition that the location of the decedent's body in the back of the room immediately after the shooting precluded the possibility that the decedent was approaching the door at the time he was shot. The medical examiner's testimony contradicts Officer Lucas' version of events and casts doubt on the veracity of Officer Lucas' story as a whole, including his statement that the decedent held a box cutter when Officer Lucas shot him. The medical examiner's testimony combined with Ms. Epp's testimony are more than sufficient to defeat summary judgment on this point.

The Officers also argue that because Plaintiff can not name a specific individual who allegedly planted the box cutter, the claim must be dismissed as to all of them. It is clear from their affidavits that Officers Simcox, Berryhill, and Lucas entered the room immediately after the shooting, followed by Officers Boyce and Bonner. If, as alleged by Plaintiff, these Officers entered the room and, upon discovering that the decedent was unarmed, made the decision to falsify evidence by placing a box cutter next to the decedent in an attempt to create probable cause for the shooting, they are each complicit in the decision to falsify evidence. It is impossible to determine from the evidence presented by each party on summary judgment the exact sequence of events following shooting. Nor can the Court determine what role, if any, each of the Officers may have played in the alleged fabrication of evidence. Of course, it remains Plaintiff's burden at trial to prove participation in fabricating evidence

---

**3.** Plaintiff maintains that he brings a fabrication of evidence claim as a *Fourteenth Amendment* violation of his right to substantive due process. As there is no doubt that this claim arises from the allegedly illegal seizure of the decedent based on the fabricated evidence, his claims are properly analyzed under the Fourth Amendment. Because the claims are interrelated, the Court addresses them together on summary judgment.

on the part of each Defendant. The Court DENIES the motion for summary judgment as to the claim that the Officers fabricated evidence.

■ All of the Officers except Officer Berryhill also move to dismiss the false arrest claim on the grounds that they did not make the decision to arrest the decedent. Officer Berryhill held the final authority to proceed with criminal charges against the decedent. However, as discussed in the preceding paragraph, to the extent that each of the Officers allegedly participated in fabricating evidence to create probable cause to arrest the decedent, their motion for summary judgment must be DENIED.

■ Officer Berryhill separately requests that the Court dismiss the false arrest claim because he had probable cause to arrest the decedent. It is clearly established that an arrest without probable cause violates the Fourth Amendment. *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir.2003).

> For probable cause to arrest to exist, the facts and circumstances within the officer's knowledge [must be] sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense. Whether there exists a probability of criminal activity is assessed under a reasonableness standard based on an examination of all facts and circumstances *within an officer's knowledge at the time of an arrest.* The existence of probable cause is a jury question, unless there is only one reasonable determination that is possible.

*Thacker v. City of Columbus*, 328 F.3d 244, 255 (6th Cir.2003) (internal citations and quotation marks omitted) (emphasis in original).

Officer Berryhill maintains that he had probable cause to make a warrantless ar-

rest of the decedent based on the evidence at the time of the arrest. Officer Lucas stated that the decedent approached him with a box cutter when he broke down the bedroom door. Other Officers located drugs elsewhere on the premises. Officer Berryhill maintains that these facts created probable cause for arresting the decedent on the charges of aggravated assault and possession of marijuana.

By contrast, Plaintiff asserts that the decedent was naked and unarmed at the time Officer Lucas shot him. Plaintiff offers the affidavit and deposition testimony of Ms. Epps, the other person in the room with the decedent at the time of the shooting, in support of this version of the incident. Plaintiff further argues that the box cutter was shut in a toolkit in a different room at the time of the shooting and later was placed near the decedent in an attempt to provide probable cause for the arrest. Ms. Epps testified in her deposition that the box cutter belonged to an individual named Snag, across the hall, and was not in the room at the time of the shooting. Plaintiff also notes that the decedent was not named in the search warrant and the drugs were not found in the bedroom where he was located, but were found in a trailer outside in the back. Given the evidentiary dispute, including the alleged fabrication of evidence, the question of probable cause presents a classic factual dispute appropriate for submittal to a jury. The Officers are not entitled to dismissal or summary judgment as to the Fourth Amendment fabrication of evidence and false arrest claims. The Court DENIES the Officers' motion as to these claims.

### d. Malicious prosecution

■ With respect to Plaintiff's malicious prosecution claim, which seems to appear in Count II (asserted only against the City

and Officer Berryhill), the parties have noted conflicting case law regarding whether such a § 1983 claim exists. The Supreme Court made clear in *Albright v. Oliver*, 510 U.S. 266, 275, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994), that the substantive due process guarantee in the Fourteenth Amendment can not support a § 1983 claim for prosecution without probable cause. The Court held that such a claim must be analyzed under the Fourth Amendment, but left open the question of whether the claim could succeed under the Fourth Amendment. *Id.* Different panels of the Sixth Circuit have reached opposite conclusions on this remaining question. In *Spurlock v. Satterfield*, 167 F.3d 995, 1006 (6th Cir.1999), the court stated the right to be free from malicious prosecution is clearly established under the Fourth Amendment.

Subsequently, in *Frantz v. Village of Bradford*, 245 F.3d 869, 876 (6th Cir.2001), the majority of a new panel determined that the decision in *Spurlock* "summarily concluded that such a right was 'clearly established' " without fully considering the Supreme Court's opinions in *Albright*. After examining *Albright*, the panel in *Frantz* concluded that if a plaintiff may maintain a suit under the Fourth Amendment based on an illegal seizure, that individual "cannot bring a separate constitutional claim for malicious prosecution." *Id.*, 245 F.3d at 876.[4] Notably, in reaching this decision, the panel majority appears to have departed from the decision of nine other circuit courts. The panel cited to the nine other circuits that each have recognized such a cause of action, but with varying elements. *Id.* at 873–74. Judge Gilman dissented from the majority opinion in *Frantz*, noting that the panel should be bound by the earlier decision in *Spur-*

*lock*, despite the fact that they might disagree with the resolution of the issues in that case. *Id.* at 879.

A third panel addressed the availability of a § 1983 malicious prosecution claim in *Darrah v. City of Oak Park*, 255 F.3d 301, 308 (6th Cir.2001). The panel reaffirmed *Spurlock*, finding that *Frantz* was not binding on this point, and reiterating that "malicious prosecution of an individual and continued detention of an individual without probable cause clearly violate rights afforded by the Fourth Amendment[.]" *Id.* at 310 (citing *Spurlock*, 167. F.3d at 1006). The panel also noted that *Spurlock* remains controlling authority because one panel of the Sixth Circuit can not overrule the decision of another panel. *Id.* at 310. *See also Thacker v. City of Columbus*, 328 F.3d 244, 259 (6th Cir.2003).

This Court considers itself bound by the decisions in *Spurlock* and *Darrah*, which permit a Plaintiff to bring a § 1983 claim for malicious prosecution pursuant to the Fourth Amendment. However, the Court concludes that Plaintiff can not maintain a malicious prosecution claim against Officer Berryhill. The Sixth Circuit has not yet set forth the elements of a malicious prosecution claim. *Thacker*, 328 F.3d at 259. However, as Judge Gilman noted in his dissent in *Frantz*, "in order to distinguish the § 1983 cause of action for malicious prosecution from that for false arrest, the complaint must allege that the constitutional seizure resulted from unreasonable prosecutorial action taken to bring the plaintiff before the court independent of any initial physical seizure." 245 F.3d at 880.

It is clear that Plaintiff was arrested after the shooting. However, there is no indication in the Amended Complaint, or in

---

4. In rendering its decision, the panel noted that it might still be possible for a plaintiff whose Fourth Amendment rights have not be

violated by an illegal seizure to bring a § 1983 claim for malicious prosecution. *Id.* at 876 n. 2.

Plaintiff's response to the summary judgment motion, that the decedent was subject to any criminal prosecution after Officer Berryhill arrested him. Since there was no prosecutorial action taken in this case after Plaintiff was arrested, it is evident that Plaintiff can not maintain an action for malicious prosecution against Officer Berryhill. The Court GRANTS the Officer Berryhill's motion for summary judgment as to this claim.

Finally, because of the clear factual dispute in this case, to the extent the Court has denied the Officers' motion for summary judgment as to particular Fourth Amendment claims, the Court also DENIES the Officers' request for summary judgment based on qualified immunity.

### 3. Loss of Consortium

 The Officers also move to dismiss Plaintiff's demand for damages based on loss of consortium claim with respect to the federal claims.[5] Section 1983 claims are personal to the individual claiming injury (i.e., the decedent in this case) and are not derivative. *Jaco v. Bloechle,* 739 F.2d 239, 241 (6th Cir.1984); *Claybrook v. Birchwell,* 199 F.3d 350, 357 (6th Cir.2000) ("no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family members"). Therefore, the Officers argue that Plaintiff can not maintain a federal loss of consortium claim.

 Plaintiff argues in response that he requests damages based on a loss of consortium claim belonging to the decedent, as opposed to his heirs. Tennessee law applies to determine the survival of a civil rights action as long as it is not in conflict with the Constitution and laws of the United States. *Jaco,* 739 F.2d at 241.

Plaintiff argues that in this case a loss of consortium claim is permitted by Tennessee law and not inconsistent with federal law as expressed in *Jaco.* Plaintiff relies on a recent case interpreting the Tennessee survival statute, Tennessee Code Annotated, § 20–5–113. *Jordan v. Baptist Three Rivers Hosp.,* 984 S.W.2d 593, 598 (Tenn. 1999). In *Jordan,* the Tennessee Supreme Court stated that the statute preserves "whatever cause of action was vested in the victim at the time of death." *Id.* The court applied the statute to permit spouses and children of the decedent to assert loss of consortium claims. *Id.* at 601–02.

Relying on the Tennessee Supreme Court's decision in *Jordan,* Plaintiff argues that consortium claims now belong to the decedent, as opposed to the decedent's heirs, and constitute part of the decedent's cause of action. Plaintiff then presumes loss of consortium damages are available under his § 1983 claims because the damages belong to the decedent. *Jordan* does not support this conclusion. In *Jordan,* the court noted that the survival statute also provides that "damages may be recovered 'resulting to the parties for whose use and benefit the right of action survives from the death.'" *Id.* at 598. The court went on to state that "survivors of the deceased may recover damages for *their losses* suffered as a result of the death as well as damages sustained by the deceased from the time of injury to the time of death." *Id.* (emphasis added). Thus, the court clearly recognized a distinction between those damages that are recovered on behalf of the decedent and those, such as loss of consortium, that clearly are suffered and recovered by the decedent's heirs. As such, the federal loss of consortium claim does not belong to the decedent and is hereby DISMISSED.

---

5. Plaintiff also asserts loss of consortium in connection with his state law claims. The Officers do not challenge the state law consortium claim at this time.

## B. State Law Claims

The state law claims asserted in the Amended Complaint are against Officer Lucas for negligence and against all of the Officers for outrageous conduct.[6]

### 1. Negligence

■■■ The City has waived its immunity for claims that its employees committed acts of negligence. Tenn.Code Ann. § 29-20-205. Where the City has waived its immunity, municipal employees are granted immunity from suit. Tenn.Code Ann. § 29-20-310(b). Accordingly, because the City has waived its immunity for the negligence claim in this case, Officer Lucas is immune from suit for this claim. The Court DISMISSES the negligence claim against Officer Lucas.

### 2. Outrageous Conduct

■■■ In order to prevail on a claim for intentional infliction of emotional distress in Tennessee, a plaintiff must prove: (1) the conduct complained of was intentional or reckless; (2) the conduct was so outrageous that it is not tolerated by civilized society; and (3) the conduct resulted in serious mental injury to the plaintiff. *Miller v. Willbanks*, 8 S.W.3d 607, 612 (Tenn. 1999). Tennessee applies the standard set forth in the Restatement (Second) of Torts, which provides in part:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intention that is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the

conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Bain v. Wells*, 936 S.W.2d 618, 623 (Tenn. 1997) (quoting Restatement (Second) of Torts § 46 comment d (1965)).

■■■ Judge Mays previously dismissed this claim because Plaintiff failed to allege that the decedent had suffered serious mental injury. Plaintiff's Amended Complaint alleges that the decedent was hospitalized for six weeks, during which time he was paralyzed, but also conscious and aware of his surroundings. For one week he was detained at the hospital's prison ward and was not permitted to see his friends or family. Plaintiff claims that during this time the decedent suffered severe mental and emotional pain and anguish.

In the present motion, the Officers contend that their actions do not rise to the level of outrageous conduct. Plaintiff argues in response that the Officers alleged actions after the shooting, i.e. falsifying evidence by placing a box cutter next to the decedent, falsely arresting the decedent, and charging him with aggravated assault and possession of marijuana, which caused him to be held in the prison ward without access to friends or family, are atrocious and utterly intolerable. Given the facts of this case, the question of whether the Officers' conduct was "outrageous" or constituted intentional infliction of emotional distress is best left to a jury.

---

6. Plaintiff pled his assault and battery case only against the City, therefore, the Court will not address this aspect of the Officers' motion.

The Court DENIES the Officers' motion for summary judgment as to the outrageous conduct claim.

## IV. Conclusion

For the foregoing reasons, the Court GRANTS the Officers' motion to dismiss or for summary judgment as to the Fifth and Fourteenth Amendment claims in their entirety, the Fourth Amendment malicious prosecution claim, the federal loss of consortium claim, and the state law negligence claim. The Court DENIES the Officers' motion as to the Fourth Amendment excessive force, fabrication of evidence, and false arrest claims, as well as the state law outrageous conduct claim.