NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0875n.06
Filed: December 20, 2007

Case No. 06-6322

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BRUCE T. WILLIAMS and LILLIAN F. WILLIAMS, | ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| BRIAN LEATHERWOOD and CITY OF KNOXVILLE, TENNESSEE, | ) ) ) | |
| Defendants-Appellees. | ) ) | |

BEFORE:  BOGGS, Chief Judge; McKEAGUE, Circuit Judge; and COHN,[*] District
Judge.

**AVERN COHN, District Judge.**  This is a civil rights action based on 42 U.S.C. §§ 1983 and

1988 and various provisions of Tennessee law.  Plaintiffs-Appellants Bruce Williams and Lillian

Williams appeal from the district court's order granting summary judgment to Defendants-

Appellees, the City of Knoxville, Tennessee ("Knoxville") and Knoxville police officer Brian

Leatherwood ("Leatherwood").  The Williamses claim that Leatherwood violated the Fourth

Amendment when he detained Bruce Williams for approximately fifteen minutes during the

investigation of a possible aggravated assault, and that Leatherwood committed the state law

torts of deficient investigation and false arrest and violated the Tennessee Constitution.  The

---

[*]The Honorable Avern Cohn, United States District Judge for the Eastern District of
Michigan, sitting by designation.

premise of the Williamses's claim against Knoxville is that the Knoxville Police Department had a policy or custom of encouraging violations of the Fourth Amendment.

For the reasons that follow, the decision of the district court will be affirmed.

## I.  BACKGROUND

### A.  Facts

The following are the facts as gleaned from the record.  None are in serious dispute.

On April 4, 2005, Bruce and  Lillian Williams were traveling along Interstate 40/75 in Knox County, Tennessee, when they encountered dense traffic.  To avoid the traffic problem, Bruce Williams drove his white pick-up truck onto the right shoulder of the highway toward the next exit.  The driver of a tractor-trailer apparently took issue with Williams's maneuver and pulled onto the shoulder, forcing the Williamses's vehicle onto the grass.  The drivers exchanged obscene gestures.  Williams then continued driving on the shoulder toward the exit until additional traffic forced him to come to a complete stop.

At this time, the driver of the tractor-trailer exited his cab and approached the Williamses's vehicle in what they say was a threatening, aggressive manner.  Williams retrieved a loaded .357 Magnum revolver from the glove compartment of the pick-up truck and placed the barrel on the edge of the open window.  The parties exchanged words, and eventually the driver of the tractor-trailer retreated to his truck.  Several drivers caught in the traffic jam witnessed the incident and called 911; at least one caller stated that Bruce Williams displayed a revolver.  The reports included a description and the license plate number of the Williamses's pick-up truck.

Approximately twenty-five minutes later, the Williamses's pick-up truck was seen in North Knoxville.  Leatherwood responded to a dispatch and stopped the truck using his blue

2

lights. By the time he initiated the stop, Leatherwood knew that the truck was registered to Bruce Williams and that Williams had a license to carry a concealed weapon.

Leatherwood approached the truck with his gun drawn but pointed away from the truck. He asked Bruce Williams to step out and patted him for weapons. Leatherwood then handcuffed Williams and placed him in the back seat of his police cruiser. Leatherwood says that he intended to detain Williams until he could determine whether the victim of what he considered a potential aggravated assault intended to file charges. Bruce Williams says that Leatherwood told him that he was being handcuffed and placed in the police cruiser for his own safety.

Within fifteen minutes, Leatherwood determined that the alleged victim would not file charges. Leatherwood then released Bruce Williams and returned his revolver and ammunition. Bruce Williams claims that the next day he began to suffer pains in his abdomen, eventually requiring two surgeries for a double hernia that was allegedly caused by being roughly placed in the police cruiser with his hands secured behind his back.

Another police officer at the scene spoke with Lillian Williams. It is not clear whether or not Mrs. Williams exited the pick-up truck. She says that she was humiliated and embarrassed by the incident.

**B. Procedural History**

In April 2005, the Williamses filed a complaint against Knoxville and Leatherwood, seeking damages in excess of $500,000 pursuant to 42 U.S.C. §§ 1983 and 1988 and the Tennessee Governmental Tort Liability Act, TENN. CODE. § 29-20-101 et seq. They claimed that Knoxville failed to provide adequate training to its police officers and had an unconstitutional policy or custom regarding investigatory stops and the handcuffing of detainees. The Williamses

also claimed that Leatherwood effected a seizure in violation of the Fourth Amendment, that he committed the state law torts of deficient investigation and false arrest, and that he violated the Tennessee constitution. The district court granted summary judgment to both Knoxville and Leatherwood, finding that Leatherwood did not violate the Williamses's Fourth Amendment rights or commit any tort.

On appeal, the Williamses claim that the district court erred (1) in holding that Leatherwood's detention of Bruce Williams was permissible under the Fourth Amendment, (2) in refusing to apply Tennessee law where it was more advantageous than federal law pursuant to 42 U.S.C. § 1988(a), (3) in holding that the Due Process Clause and the Equal Protection Clause did not provide a basis for liability under § 1983, (4) in declining to rule on Leatherwood's claim of qualified immunity, (5) in granting summary judgment on the state law claims, and (6) in denying the Williamses's motion to amend their complaint.

## II. STANDARD OF REVIEW

The court reviews an order granting summary judgment *de novo*. Holloway v. Brush, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." FED. R.

4

CIV. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Rather, the nonmoving party must present "significant probative evidence" in opposition to the motion for summary judgment in order to defeat the motion. See Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see also Anderson, 477 U.S. at 249-50. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. Bsharah v. Eltra Corp., 394 F.2d 502, 503 (6th Cir. 1968).

The court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson, 477 U.S. at 251-52). The court "must view the evidence in the light most favorable to the non-moving party." Employers Ins. of Wausau v. Petroleum Specialties, Inc., 69 F.3d 98, 101 (6th Cir. 1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See Anderson, 477 U.S. at 255. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. Thompson v. Ashe, 250 F.3d 399, 405 (6th Cir. 2001).

### III. SECTION 1983

The Williamses claim that Leatherwood violated their Fourth Amendment rights because there were no articulable facts to which he could point to justify an investigatory stop of their vehicle and because the detention of Bruce Williams ripened into an arrest without the requisite probable cause. We find that these claims are without merit and therefore do not reach the

5

subsidiary issues of Leatherwood's defense of qualified immunity and Knoxville's potential municipal liability for an unconstitutional policy or custom.

## A. Investigatory Stop

Police may briefly stop an individual for investigation if they have a "reasonable suspicion" that the individual has committed a crime. United States v. Palomino, 100 F.3d 446, 449 (6th Cir. 1996); Terry v. Ohio, 392 U.S. 1, 27 (1968). The same standard applies to vehicle stops. Palomino, 100 F.3d at 449; see also Delaware v. Prouse, 440 U.S. 648, 663 (1979). The Sixth Circuit has explained that the "reasonable suspicion" standard requires that law enforcement officers possess specific facts tending to indicate criminal activity before initiating an investigative detention:

> "Reasonable suspicion" is more than an ill-defined hunch; it must be based upon a particularized and objective basis for suspecting the particular person of criminal activity. It requires specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an investigatory stop. The standard outlined in Terry and its progeny is not onerous. The requisite level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence. Moreover, reasonable suspicion can arise from evidence that is less reliable than what might be required to show probable cause.

Houston v. Clark County Sheriff Deputy John Does, 174 F.3d 809, 813 (6th Cir. 1999) (citations and internal quotation marks omitted). Reasonable suspicion need not arise from an officer's own observations; rather, it may arise from informant tips and dispatcher information. Smoak v. Hall, 460 F.3d 758, 779 (6th Cir. 2006).

Under the totality of circumstances present in this case, Leatherwood had information sufficient to form a reasonable suspicion that Bruce Williams had engaged in criminal activity.

6

At the time he initiated the traffic stop, Leatherwood knew at least that (1) there had been an incident of "road rage" involving a potential aggravated assault on a nearby stretch of highway within the past half hour; (2) several persons called 911 to report the incident, and gave a description of the vehicle and a license plate number matching the Williamses's vehicle; (3) at least one caller stated that the driver of the vehicle had displayed a firearm; (4) the owner of the vehicle was named Bruce Williams; and (5) Bruce Williams had a license to carry a concealed weapon. These facts were sufficient to raise a reasonable belief that a crime had occurred along the highway and that Bruce Williams was involved in that crime.

The Williamses argue that under Florida v. Royer, 460 U.S. 491 (1983), Leatherwood was not permitted to detain Bruce Williams against his will for any length of time. This is incorrect. The Royer Court approved of police questioning of individuals in the absence of reasonable suspicion, in which case the individuals may decline to answer and go on their way. Id. at 497-98. However, the Court also noted "that reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop." Id. at 498. This case is of the latter variety: Leatherwood had a reasonable suspicion of Bruce Williams's involvement in criminal activity, and such reasonable suspicion provided a proper basis for temporarily detaining Bruce Williams for investigatory purposes.

### B. Detention

After concluding that the initial basis for an investigatory stop was proper, the court must determine "whether the degree of intrusion . . . was reasonably related in scope to the situation at hand, which is judged by examining the reasonableness of the officials' conduct given their suspicions and the surrounding circumstances." United States v. Garza, 10 F.3d 1241, 1245 (6th

7

Cir. 1993). The reasonableness of the detention is judged on two distinct criteria: (1) whether it was sufficiently limited in time, and (2) whether the law enforcement officials used the least intrusive investigative means reasonably available. Bennett v. City of Eastpointe, 410 F.3d 810, 825-26 (6th Cir. 2005).

As to the temporal element, an investigative detention that is constitutionally permissible at the outset may eventually "ripen into a defective seizure that must be based on probable cause." United States v. Heath, 259 F.3d 522, 530 (6th Cir. 2001) (citing United States v. Place, 462 U.S. 696, 709 (1983)). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." Royer, 460 U.S. at 500. "There is no rigid time limitation on the lawfulness of a Terry stop," United States v. Winfrey, 915 F.2d 212, 217 (6th Cir. 1990) (citing United States v. Sharpe, 470 U.S. 675, 686-87 (1985)), but a court must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant," Sharpe, 470 U.S. at 686.

The manner and length of the detention here were reasonably related to the reasons for which Leatherwood initially stopped the Williamses's vehicle. The reports that Bruce Williams displayed a firearm during a road rage incident were sufficient to create a reasonable concern that the driver of the vehicle was armed and dangerous; therefore, it was reasonably necessary for Leatherwood's own protection to approach the vehicle with a weapon drawn and to order Bruce Williams out of the vehicle. See Garza, 10 F.3d at 1246. Neither the use of handcuffs nor detention in a police cruiser transform an investigatory stop into an arrest so long as the circumstances make it reasonable for the officer to take these precautions. Houston, 174 F.3d at

8

815; United States v. Critton, 43 F.3d 1089, 1092-94 (6th Cir. 1995). Based on the reports that Leatherwood had received over his police radio, it was reasonable for him to protect himself and others by handcuffing Bruce Williams and placing him in the back of the police cruiser.

The Williamses object that, at his deposition, Leatherwood testified that he placed Bruce Williams in the cruiser to prevent him from fleeing rather than for safety reasons. This argument is unconvincing since a detainee's flight obviously affects the safety of the detainee, the detaining officer, and other citizens. In any case, Bruce Williams admitted in his own deposition that Leatherwood stated that he was placing him in the patrol car for safety reasons.

As to the length of the stop, detaining the Williamses for fifteen minutes was reasonable under the circumstances. As an initial point, this is substantially less than the investigative stop of thirty-five minutes to an hour that this court approved in Houston, 174 F.3d at 815. Moreover, the record indicates that Leatherwood expeditiously sought to determine whether Bruce Williams had committed a crime and whether the driver of the tractor-trailer wished to press charges against him. Upon determining that an arrest was not appropriate, Leatherwood immediately released Bruce Williams and returned his firearm and ammunition. See Michigan v. Summers, 452 U.S. 692, 700 n.12 ("If the purpose underlying a Terry stop – investigating possible criminal activity – is to be served, the police must under certain circumstances be able to detain the individual for longer than the brief time period involved in Terry").

Because there is no evidence of any undue delay on Leatherwood's part, the Williamses's invocation of United States v. Davis, 430 F.3d 345 (6th Cir. 2005), is unavailing. In Davis, officers prolonged an investigatory stop for an hour after a drug-sniffing dog had failed to alert positively to the presence of narcotics in the vehicle in order to allow for a second examination

9

by another dog. The court reasoned that, as the first dog had already confirmed that there were no narcotics present, the continued detention served no investigative purpose and therefore ran afoul of the Fourth Amendment. In this case, by contrast, Leatherwood released the Williamses without any delay after determining that an arrest was not appropriate.

### C. State Law Standards Under 42 U.S.C. § 1988(a)

The Williamses contend that where a plaintiff cannot prevail on a constitutional claim in a § 1983 suit, federal courts should "borrow" state law in cases where it affords more robust protection of the plaintiff's civil rights pursuant to 42 U.S.C. § 1988(a).[1] The Williamses read the statute incorrectly. According to § 1988(a), state law is appropriately considered in a § 1983 claim only where there is no rule of federal law on point and state law is consistent with the Constitution and laws of the United States. "The express terms of § 1988(a) prevent us from *replacing* federal law with more favorable state law, as plaintiffs would have us do." Wilson v. Morgan, 477 F.3d 326, 332 (6th Cir. 2007); see also Monell v. Dep't of Soc. Serv. of New York, 436 U.S. 658, 701 n.66 (1978) ("42 U.S.C. § 1988 cannot be used to create a federal cause of action where § 1983 does not otherwise provide one"); Moor v. County of Alameda, 411 U.S.

---

[1] Section 1988(a) provides in relevant part: "The jurisdiction in civil and criminal matters conferred on the district courts . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause."

693, 703-04 (1973) ("[W]e do not believe that the section [1988], without more, was meant to authorize the wholesale importation into federal law of state causes of action").

Here, the Fourth Amendment to the United States Constitution and cases decided thereunder supply the standard for evaluating the Williamses's claim. As discussed above, the Williamses do not have a valid claim for violation of their Fourth Amendment rights. Section 1988 does not allow the Williamses simply to discard the Fourth Amendment in search of some more favorable provision of Tennessee law.

## D. Fourteenth Amendment Claims

The Williamses argue that apart from the Fourth Amendment, the Due Process and Equal Protection clauses of the Fourteenth Amendment provide an "independent constitutional basis for Section 1983 liability" based on alleged violations of their "right to liberty." As this Court made clear in a recent decision, these claims are unavailing.

> The Equal Protection Clause prohibits states from making "distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from other similarly situated without any rational basis for the difference." Radvansky v. City of Olmsted Falls, 395 F.3d 291, 312 (6th Cir. 2005). As in Radvansky, plaintiffs cannot make out an equal protection claim because plaintiffs merely allege that they were treated unfairly by defendants, not that they were members of a protected class or treated differently from others. Likewise, the plaintiff in Radvansky also argued that the defendants deprived him of liberty without due process by arresting him without probable cause. We flatly rejected that theory because "it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." Id. at 313.

Wilson, 477 F.3d at 333. As to the Williamses's claims under the Fourteenth Amendment, this case is essentially identical to Wilson and Radvansky. The Williamses cannot make out an equal

11

protection claim and may not substitute the standards of the Due Process Clause for those of the Fourth Amendment.

## IV. State Law Tort Claims

### A. Deficient Investigation

The Williamses press a claim against Leatherwood for "deficient investigation." This is a negligence claim based on the theory that Leatherwood failed to conduct a reasonably prudent investigation. Knoxville has waived its immunity for claims that its employees committed negligent torts. TENN. CODE § 29-20-205. Where a city has waived immunity for such acts, municipal employees are granted immunity from suit. TENN. CODE § 29-20-310(b). Accordingly, Leatherwood is immune from suit, and the Court will dismiss this claim. See Robinson v. City of Memphis, 340 F. Supp. 2d 864, 873 (W.D. Tenn. 2004) (dismissing negligence claim against police officer)

### B. False Arrest

For Bruce Williams to prevail on his state law claim of false arrest, he must show that (1) he was restrained or detained against his will, and (2) the restraint or detention was unlawful. Coffee v. Peterbilt of Nashville, Inc., 795 S.W.2d 656, 659 (Tenn. 1990). "The law is well settled in Tennessee that an investigative detention requires only a showing of reasonable suspicion rather than probable cause." State v. Wilhoit, 962 S.W.2d 482, 487 (Tenn. Crim. App. 1997). As discussed above, Leatherwood did have a reasonable suspicion that a crime had been committed and that Bruce Williams committed it. Williams's claim for false arrest is therefore without merit.

12

### C. Violation of Tennessee Constitution

Tennessee does not recognize a private right of action for violations of the Tennessee Constitution.  Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n, 15 S.W.2d 434, 444-45 (Tenn. Ct. App. 1999); Cline v. Rogers, 87 F.3d 176, 180 (6th Cir. 1996).  The district court was correct to dismiss this claim.

### V.  Denial of Motion to Amend Complaint

The Williamses filed a motion to amend their complaint with the district court after entry of the order granting defendants' motion for summary judgment and dismissing the case.  The Williamses now attack the district court's decision to deny the motion for leave to amend.  Denial of a motion for leave to amend is reviewed for abuse of discretion.  Wade v. Knoxville Util. Bd., 259 F.3d 452, 459 (6th Cir. 2001).

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision.  Delay by itself is not sufficient reason to deny a motion to amend.  Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

Id. at 458-59.  "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier."  Id. at 459.

In this case, the district court found that (1) the Williams were aware of the factual basis of their complaint from the outset of the litigation; (2) they did not offer any reason for failing to move for leave to amend until after entry of the order granting summary judgment; (3) granting leave to amend would substantially prejudice defendants by requiring them to engage in new discovery, prepare new defenses, and file additional motions; (4) the amendments would likely

13

be futile in light of the district court's holding that Leatherwood did not violate the Fourth Amendment or commit a tort in the course of the investigative detention. Even on appeal, the Williamses fail to offer any explanation for the lateness of their motion. In the exercise of its discretion, the district court found that justice did not require that the Williamses be granted leave to amend. We find no abuse of discretion in this regard.

## VI. Conclusion

For all of the above-stated reasons, the district court's grant of summary judgment is AFFIRMED.